UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 22-CR-00115 ) ) Honorable John Robert Blakey |
| MICHAEL J. MADIGAN and MICHAEL F. McCLAIN, | ) ) Magistrate Judge Jeffrey Cole ) |
| Defendants. | ) |

**MICHAEL J. MADIGAN'S MOTION TO STRIKE SURPLUSAGE**

Pursuant to Rule 7(d) of the Federal Rules of Criminal Procedure, Michael J. Madigan, by his undersigned counsel, moves this Court for an order striking irrelevant and prejudicial language from the Superseding Indictment, and in support thereof, states as follows:[1]

**Preliminary Statement**

In the 117-page Superseding Indictment, the government sets forth overarching allegations that Michael J. Madigan violated the Racketeer Influenced and Corrupt Organizations Act ("RICO") by using his positions as a State Representative and Speaker of the Illinois House of Representatives to "cause various businesses" to employ "political allies, political workers, and associates" and to solicit bribes from individuals who had business with the State of Illinois and the City of Chicago. The underlying charges include conspiracy to commit federal program bribery, among others. Throughout the Superseding Indictment, the government uses the phrases "Madigan Enterprise" and "Madigan's associates" without any logical need beyond providing a prejudicial public soundbite and attempting to portray a broader conspiracy than alleged. Additionally, the government includes references to the

---

[1] After conferral, counsel for the government stated that it opposes this Motion.

1

passage of three pieces of legislation and the failure of another to become law, but includes no allegations that Madigan took any action that *caused* the passage or failure of this legislation. Madigan requests that this irrelevant and prejudicial language be stricken.

### Argument

The Superseding Indictment includes three categories of irrelevant language that serves only to prejudice Madigan in the public and with a jury. Upon a defendant's motion, the Court may strike surplusage from an indictment to protect the defendant from immaterial or irrelevant allegations which are prejudicial. Fed. R. Crim. P. 7(d), advisory committee's notes, 1944 adoption; *see also* 1 Charles A. Wright & Andrew D. Leipold, Federal Practice and Procedure § 128 (4th ed. 2008) ("The purpose of 7(d) is to protect the defendant against prejudicial allegations of irrelevant or immaterial facts."); *United States v. Hollnagel*, No. 10 CR 195, 2011 WL 3664885, at *13 (N.D. Ill. 2011). A district court should grant a motion to strike surplusage from the indictment when "the targeted allegations are clearly not relevant to the charge and are inflammatory and prejudicial." *United States v. Groos*, 616 F. Supp. 2d 777, 960-61 (N.D. Ill. 2008) *quoting U.S. v. Black*, 469 F.Supp.2d 513, 518 (N.D. Ill. 2006).

Prejudicial statements in indictments may be stricken before the indictment goes to a jury if they will prejudice a defendant in the public prior to trial. *See United States v. Cooper*, 384 F. Supp. 2d 958, 960 (W.D. Va. 2005) ("It also is clear that indictments are public documents that, like governmental press statements, often are widely reported through the media."). This is necessary because when an indictment "contains surplusage that goes beyond its limited purpose of charging a party before the court, that surplusage operates much like an extrajudicial statement in its likely impact and the potential for prejudice." *United States v. Cooper,* 384 F.Supp.2d 958, 961 (W.D. Va. 2005); *see also United States v. Lawson,* 2009 WL

62145, at *2 (E.D. Ky. Jan. 8, 2009) ("Since all indictments require the government to include sufficient information for the defendant to know the specific crimes that have been charged, any unnecessary language in a 'speaking' indictment might be used for an unnecessary or improper purpose."). For this reason, in *Cooper,* the court found ABA Model Rule 3.6 (prohibiting extrajudicial statements that have a substantial likelihood of materially prejudicing an adjudicative proceeding) instructive in identifying material that would be prejudicial. *United States v. Cooper,* 384 F.Supp.2d 958, 961 (W.D. Va. 2005) ("[I]t is clear that the Model Rules would prevent a prosecutor from making statements at a press conference that go to a criminal defendant's 'credibility, reputation, or criminal record.'"); *see also* ABA Model Rule 3.8 Comment ("Although the announcement of an indictment, for example, will necessarily have severe consequences for the accused, a prosecutor can, and should, avoid comments which have no legitimate law enforcement purpose and have a substantial likelihood of increasing public opprobrium of the accused."). Indeed, "[d]espite the all too common use of 'speaking' indictments, the function of a federal indictment is to state concisely the essential facts constituting the offense..." *United States v. Lawson,* 2009 WL 62145, at *2 (E.D. Ky. Jan. 8, 2009) *citing United States v. Edmond*, 924 F.2d 261, 269 (D.C.Cir.1991). Because the irrelevant statements in the Superseding Indictment prejudice Madigan in the public, the language should be stricken immediately.

I. **Count One: The phrase "Madigan Enterprise" should be stricken.**

The phrase "Madigan Enterprise" should be stricken from the six sentences where it is used in the Superseding Indictment because it is irrelevant and unduly prejudicial to refer to the allegedly criminal enterprise using a defendant's name. In Count One, alleging a RICO conspiracy, the government defines the enterprise as both the "Madigan Enterprise" or the

3

"enterprise." (Dkt. 37, Count I, ¶ 2.) Thus, the government recognizes that the term "enterprise" is factually and legally sufficient when discussing the allegedly criminal enterprise. Still, the Superseding Indictment includes the phrase "Madigan Enterprise" five more times:

- "The Madigan Enterprise was engaged in, and its activities affected, interstate commerce."

- "The Madigan Enterprise constituted an ongoing organization whose members functioned as a continuing unit for the common purpose of achieving the objectives of the enterprise."

- "The purposes of the Madigan Enterprise included but were not limited to…"

- "The illegal activities committed by members and associates of the Madigan Enterprise included, but were not limited to…"

- "[D]efendants herein, being persons employed by and associated with an enterprise, namely, the Madigan Enterprise as described in paragraphs 2-9 above …"

(Dkt. 37, Count I, ¶¶ 2, 3, 4, 10 at 7, 11.)

In *United States v. Gatto,* the government referred to the RICO enterprise as the "Gatto Group" throughout the indictment. *United States v. Gatto,* 746 F.Supp. 432 (D. N.J. 1990) (overruled on other grounds). The court found that the "safest course of action" was to order that the government redact the phrase "Gatto Group" and substitute the phrase "criminal enterprise" to remove the potential for unfair prejudice. *Id*. In reaching this conclusion, the court noted that the Third Circuit had "recognized that the government's naming of the enterprise after one of the defendants had the potential for prejudice, as would identification of a defendant by a damaging alias." *Id. citing United States v. Vastola,* 899 F.2d 211, 232 (3d Cir.1990).

As in *Gatto,* the safest course of action here is to order that the phrase "Madigan Enterprise" be substituted with simply "enterprise." The phrase "Madigan Enterprise" serves no relevant purpose aside from improperly leading the public and jurors to assume that Madigan is guilty of the RICO charge before any evidence has been presented. The government recognized

4

that the term "enterprise" is factually and legally sufficient by referring to the enterprise both as the "Madigan Enterprise" and simply the "enterprise" throughout the indictment. On the other hand, there is a substantial danger that naming the allegedly criminal enterprise after a defendant will lead the public to infer that Madigan led the criminal enterprise, causing the public to view him as the head of a RICO enterprise before the trial has even begun. *See Cooper,* 384 F.Supp.2d 958, 961 (W.D. Va. 2005) (striking surplusage where the language gave "the Government an unwarranted extra opportunity to assert claims that are properly reserved for consideration at trial"). At trial, the inclusion of this phrase is even more problematic as it will likely lead the jury to infer that the government proved an element of the RICO charge, whether the government actually presents such evidence or not. Because the phrase "Madigan Enterprise" only serves as an extrajudicial statement that materially prejudices Madigan, it should be stricken from the six sentences where it appears in Count One.

## II. Count Two

In Count Two, the government alleges that Madigan conspired with former employees and consultants of ComEd to influence and reward him by giving jobs, contracts and monetary payments "for the benefit of Madigan and his associates." (Dkt. 37, Count II, ¶ 2(b) at 24). According to the government, these jobs were given to influence and reward Madigan in connection with his official duties as Speaker of the House of Representatives to assist ComEd with respect to the passage of favorable legislation and defeat of unfavorable legislation. (Dkt. 37, Count II, ¶ 3 at 24). At most, the government alleges that these individuals were political allies and helped with political work. The vague references to "various associates of Madigan" also implies that the charged crime is broader than the allegations support. (Dkt. 37, Count II, ¶¶ 3, 4, 5 at 24-25).

Additionally, the government includes language related to the passage or failure of four

pieces of legislation without any allegations to show the actions by Madigan *caused* this outcome. The inclusion of this language only improperly attempts to lead the public, and eventually the jury, to believe that Madigan caused the passage or failure of these pieces of legislation, without any factual support. Thus, the phrase "Madigan's associates" and the references to passage of three pieces of legislation and the failure of a fourth piece of legislation are irrelevant, prejudicial and should be stricken.

### a. All references to "Madigan's associates" should be stricken.[2]

There is no factual or legal relevance that requires inclusion of the term "Madigan's associates" in the Superseding Indictment. As such, the phrase "Madigan's associates" should be stricken and replaced with the government's own language, "MADIGAN's political allies and individuals who performed political work for MADIGAN."

The government alleges that Individual 13W-1, Individual 13W-2, Individual 13W-3, Individual FR-1, and Individual 23W-1 were Madigan's political allies and performed political work for Madigan. (Dkt. 37, Count II, ¶ 4 at 25). The only other information about these individuals in the Superseding Indictment is that Individual 13W-1 was the Alderman for the Thirteenth Ward and Treasurer of the Thirteenth Ward Democratic Organization, Individual 13W-2 and Individual 13W-3 were associated with the Thirteenth Ward Democratic Organization and were precinct captains, Individual FR-1 was a former political ally of Madigan's in the House of Representatives, and Individual 23W-1 was Alderman for the Twenty-Third Ward until 2018. (Dkt. 37, Count II, ¶¶ 2(u), 2(v), 2(w), 2(x), 2(y) at 22-23). There is no additional information about the relationship between these individuals and Madigan.

Being a political ally and performing political work are not paying jobs and there is no

---

[2] While this language is primarily used in Count Two of the Superseding Indictment, defendant Madigan requests that the corresponding language in Count One be stricken for the same reasons.

formal structure among political allies, political campaigns and those that volunteer for them. While the government will be free to present evidence to establish certain relationships at trial, and argue what those relationships may mean, characterizing the individuals referenced in the indictment as "Madigan's associates" prejudices the public to infer that these individuals were Madigan's subordinates and/or were employed directly by Madigan, even though this is not alleged. Even worse, this phrase will prejudice the jury to assume that an element of the crime—that Madigan received a thing of value based on the payments to these individuals—has been met without the consideration of any evidence.

The inclusion of the references to "Madigan's associates" (including a reference to "various associates of Madigan" and a "group of Madigan associates") also creates the danger that the public and members of the jury will conclude that the alleged crimes were more wide-ranging and damaging than the government has alleged or will ultimately prove through evidence at trial. The Superseding Indictment states that Madigan participated in a conspiracy to obtain ComEd jobs for "*various associates of* MADIGAN, including MADIGAN's political allies and individuals who performed political work for MADIGAN, *including but not limited to* Individual 13W-1, Individual 13W-2, Individual 13W-3, Individual FR-1, and Individual 23W-1." (Dkt. 37, Count II, ¶ 4). The government also alleges that Madigan "wanted to add Individual 23W-1 to the *group of MADIGAN associates* paid by ComEd…" (Dkt. 37, Count II, ¶ 31(ll)). These references serve only to mislead the public and ultimately the jury by implying that additional individuals were hired as part of the alleged conspiracy, even though the government does not allege any improper hires beyond Individual 13W-1, Individual 13W-2, Individual 13W-3, Individual FR-1, and Individual 23W-1. *United States v. Miller*, 26 F. Supp. 2d 415, 420 (S.D.N.Y. 1998) (striking a paragraph as highly prejudicial because "it improperly implies

defendant's involvement in uncharged [criminal] acts"). Thus, all references to "Madigan's associates" in Counts One and Two should be stricken and, where necessary, replaced with the government's own language: "MADIGAN's political allies and individuals who performed political work for MADIGAN."

        b. **The allegations of the passage or failure of four pieces of legislation serve solely to unduly prejudice the public and jurors**.

All or parts of eight paragraphs in Count Two of the Indictment must also be stricken because they contain irrelevant, prejudicial language related to the passage or failure of legislation. Three of these paragraphs refer to the "passage" of legislation, but the government does not allege that Madigan *caused the passage* of these pieces of legislation. Paragraphs 2(m), 2(n), and 2(o) of Count Two state:

> 2(m): In 2011, the General Assembly passed the Energy Infrastructure and Modernization Act ("EIMA"). EIMA provided for a regulatory process through which ComEd was able to more reliably determine rates it could charge customers and, in turn, determine how much money it was able to generate from its operations to cover, among other things, costs for grid-infrastructure improvements. The passage of EIMA therefore helped improve ComEd's financial stability.
>
> 2(n): Following the passage of EIMA, the Illinois Commerce Commission ("ICC") interpreted the language of EIMA in a manner adverse to ComEd. In 2013, the General Assembly passed legislation, known as Senate Bill 9, that effectively overruled the ICC's adverse interpretation of EIMA.
>
> 2(o): On or about December 1, 2016, the General Assembly passed the Future Energy Jobs Act ("FEJA"), which provided for a renewal of the regulatory process that was beneficial to ComEd. After the passage of FEJA, ComEd maintained a continuing interest in advancing legislation in the General Assembly favorable to its interests, and opposing legislation that was not consistent with its operational and financial success.

(Dkt. 37, Count II, ¶¶ 2(m), 2(n), 2(o), 2(p), at 20-21).

The references to "passage" of these three pieces of legislation are irrelevant to the charges in Count Two. The government does not—and could not—allege that Madigan used his position as Speaker to exert singular power over the legislative process to cause the passage of

8

this legislation. *See Express Casino Joliet Corp. v. Johnston*, 763 F.3d 723, 730-31 (7th Cir. 2014) ("The evidence would have to be extraordinary to conclude that one corrupt official, whether the governor or anyone else, had hijacked [the work of the state legislature]."). Because the government does not allege Madigan *caused* the passage of EIMA, SB 9, or FEJA, the references to passage of this legislation are irrelevant to the charges in Count Two and should be stricken from these paragraphs because the language serves only to prejudice the public and the jury. *See, e.g., United States v. Miller*, 26 F. Supp. 2d 415, 420–21 (N.D.N.Y. 1998) (collecting cases) (finding language should be stricken where it was not caused by the charged conduct and was "irrelevant and highly inflammatory").

Another five irrelevant and prejudicial paragraphs in the Superseding Indictment refer to the failure of a piece of legislation that ComEd allegedly opposed, House Bill 5626. Paragraphs 2(p), 31(nn), 31(pp), 31(vv), and 31(ww) of Count Two state:

> 2(p): On or about February 16, 2018, House Bill 5626 ("HB 5626"), which was intended to amend the Public Utilities Act to impose certain obligations upon alternative retail electric suppliers, was filed in the Illinois House of Representatives. ComEd was opposed to HB 5626, and HB 5626 was not enacted into law.
>
> 31(nn): In or around April 2018, MADIGAN gave McClain permission to work to kill HB 5626 on behalf of ComEd, and ComEd thereafter worked to defeat HB 5626.
>
> 31(pp): On or about May 16, 2018, McClain placed a telephone call to Pramaggiore during which they discussed preventing HB 5626 from being passed in the Illinois General Assembly.
>
> 31(vv): On or about May 18, 2018, McClain caused an email to be sent to Pramaggiore, Hooker, and other ComEd employees referencing HB 5626 that noted "a friend of ours" had authorized McClain to "go ahead and kill it."
>
> 31(ww): On or about June 20, 2018, McClain placed a telephone call to Hooker, during which McClain stated that MADIGAN was the person who first "warned" them about HB 5626 and that MADIGAN had given ComEd permission to work to "kill" the legislation.

(Dkt. 37, Count II, ¶ 2(p), at 21, ¶¶ 31(nn), 31(pp), 31(vv), and 31(ww) at 57-58.)

9

These paragraphs should be stricken because the government does not allege that Madigan took any illegal actions related to this legislation. Instead, the government alleges that Madigan "warned" ComEd about the bill and give "McClain permission to work to kill" it. (Dkt. 37, Count II, ¶¶ 31(nn), 31(ww) at 57-58.) Even if true, this was not criminal. The government does not allege that McClain was a public official. The government does not allege that Madigan asked McClain to pressure any public official to "work to kill" the bill. The government does not allege that Madigan spoke to a single legislator or other public official, or directed McClain to do so on his behalf. The government's allegations set forth a situation where, at most, Madigan gave a private lobbyist "permission" to do his job and that Madigan simply did not have a position on HB 5626. These allegations are irrelevant to the charges in Count Two but serve to create an inference that these legal actions are somehow related to the alleged conspiracy. This improperly prejudices Madigan in the public and ultimately with the jury.

Based on the foregoing, Madigan respectfully requests that the Court enter an order striking the prejudicial and irrelevant language from the Superseding Indictment, as set forth in Exhibit A.

Dated: February 28, 2023

Respectfully submitted,

By: /s/ Sheldon T. Zenner

Sheldon T. Zenner, Esq. (ARDC #3122184)
Gil M. Soffer, Esq. (ARDC #6201959)
Daniel J. Collins, Esq. (ARDC #6224698)
Lari A. Dierks, Esq. (ARDC #6329610)
Ian A. Vitalis, Esq. (ARDC #6333510)
Katten Muchin Rosenman LLP
525 West Monroe Street
Chicago, Illinois 60661
(312) 902-5476
Sheldon.Zenner@Katten.com
Gil.Soffer@Katten.com
Daniel.Collins@Katten.com
Lari.Dierks@Katten.com
Ian.Vitalis@Katten.com

***Attorneys for Defendant Michael J. Madigan***